ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| ILSA CENTENO AÑESES, su hija ILSA M. DI CRISTINA CENTENO, y su hijo RAÚL DI CRISTINA CENTENO<br><br>Apelados<br><br>v.<br><br>COLEGIO DE ARQUITECTOS Y ARQUITECTOS PAISAJISTAS DE PUERTO RICO, ET AL<br><br>Apelantes | | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de Coamo<br><br>Civil número: B2CI201700088<br><br>Sobre: Daños y Perjuicios |
| ILSA CENTENO AÑESES, su hija ILSA M. DI CRISTINA CENTENO, y su hijo RAÚL DI CRISTINA CENTENO<br><br>Apelados<br><br>v.<br><br>MUNICIPIO DE COAMO; COMPAÑÍA DE SEGUROS QBE; OPTIMA INSURANCE COMPANY; COMPAÑÍA DE SEGUROS TRIPLE-S PROPIEDAD; ESTADO LIBRE ASOCIADO DE PUERTO RICO<br><br>Apelantes | KLAN202200691<br><br>cons. con<br><br>KLAN202200698 | |

Panel especial integrado por su presidente, el juez Sánchez Ramos, el juez Rivera Torres y la juez Aldebol Mora.

Aldebol Mora, Juez Ponente

# S E N T E N C I A

En San Juan, Puerto Rico, a 23 de abril de 2024.

Comparece la parte apelante, Colegio de Arquitectos y Arquitectos Paisajistas de Puerto Rico, Municipio de Coamo y QBE Optima Insurance Company, mediante dos recursos de apelación con nomenclatura KLAN202200691 y KLAN202200698, posteriormente consolidados, y nos solicita que revoquemos la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de Coamo, el 9 de mayo de 2022, notificada el

Número Identificador

SEN2024_____

12 del mismo mes y año. Mediante dicho dictamen, el foro primario le impuso al Municipio de Coamo y al Colegio de Arquitectos y Arquitectos Paisajistas de Puerto Rico la suma de $100,822.79 como compensación por daños físicos, sufrimientos y angustias mentales, así como $4,500.00 por concepto de pérdida de ingresos a favor de Ilsa Centeno Añeses. Además, otorgó la suma de $20,000.00 en concepto de angustias y sufrimientos mentales a cada uno de los hijos de esta última: Ilsa M. Di Cristina Centeno y Raúl Di Cristina Centeno.

Por los fundamentos que exponemos a continuación, se confirma el dictamen apelado en ambos recursos.

**I**

El 22 de diciembre de 2016, Ilsa Centeno Añeses (Centeno Añeses), y sus hijos Ilsa M. Di Cristina Centeno y Raul Di Cristina Centeno (apelados) incoaron una *Demanda* de daños y perjuicios en contra del Municipio de Coamo (Municipio), el Colegio de Arquitectos y Arquitectos Paisajistas de Puerto Rico (Colegio), QBE Optima Insurance Company (QBE Insurance) (apelantes), Construcciones Roalca, SE (Roalca), GA+NIF, CSP, el arquitecto Guillermo Acevedo Dávila (Acevedo Dávila) y/o la arquitecta Norma Ilia Fuster Félix.[1] En síntesis, solicitaron una indemnización por los daños sufridos por Centeno Añeses a consecuencia de una caída mientras participaba de una excursión en las instalaciones de la Antigua Casa Bernier—La Posada San Blás (Casa Bernier), en las inmediaciones de la plaza pública del Municipio. Indicaron que dicha excursión fue auspiciada por el Colegio. Sostuvieron que el accidente ocurrió el 23 de enero de 2016, mientras la mencionada instalación estaba siendo remodelada y se encontraba bajo construcción como parte de un programa gubernamental.

Asimismo, alegaron que, al concluir la charla, mientras Centeno Añeses caminaba en dirección a la salida del proyecto Casa Bernier, tropezó con un pedazo de varilla de construcción que sobresalía del suelo, la cual estaba adherida a un alambre fino conectado con una puerta rústica.

---

[1] Anejo VI del recurso KLAN202200698, págs. 61-67.

Arguyeron que no había ningún letrero o advertencia señalando la peligrosidad de la condición para las personas que fueron invitadas a transitar por el área. Según adujeron, Centeno Añeses cayó con toda la fuerza de su peso estrepitosamente en dicha área sobre su lado derecho del cuerpo, sufriendo múltiples traumas, incluyendo fracturas en el brazo derecho (húmero) y pierna izquierda (patela). De igual forma, plantearon que esta sufrió un trauma y laceraciones en el rostro, tabique y seno derecho. Indicaron que, luego de la caída, Centeno Añeses se encontraba sumamente adolorida y sobresaltada, tanto así, que no pudo levantarse por sí misma, razón por la cual se gestionaron los servicios de emergencia del 911. Plantearon que Centeno Añeses tuvo que ser llevada a la sala de emergencias del Hospital Menonita de Coamo para que se le prestaran los primeros auxilios. Describieron que de ahí fue llevada, ese mismo día, al Hospital Menonita de Aibonito, donde permaneció por más de 24 horas hasta que, posteriormente, fue transferida al Ashford Presbyterian Community Hospital para recibir servicios de ortopedia. A consecuencia de lo anterior, Centeno Añeses necesitó obtener tratamiento médico con distintos profesionales, entre ellos, el Dr. José Fumero, ortopeda, y los doctores Miguel Arroyo y Leonardo Pirillo Favor, fisiatras. Asimismo, adujeron que se le ordenaron medicamentos para el dolor, antinflamatorios y antibióticos, terapias físicas e intramusculares, y una serie de estudios radiológicos. Especificaron que Centeno Añeses fue sometida a procedimientos quirúrgicos del hombro derecho y rodilla izquierda, incluyendo la inserción de clavos y placas de titanio.

En la acción de epígrafe, se alegó que hubo negligencia debido a que el Municipio, el Colegio y QBE Insurance conocían o debían conocer que el permitir el acceso a las áreas de construcción sin las debidas medidas de protección ponía en riesgo la seguridad de las personas invitadas, por lo que debieron haber previsto esos daños. Plantearon que el Municipio era responsable de garantizar la seguridad de los transeúntes, por ser dueño del lugar donde ocurrió el accidente y por omitir instituir la

rotulación necesaria para advertir el peligro existente. Asimismo, arguyeron que el Colegio fue negligente por propulsar y auspiciar la excursión arquitectónica por un área de construcción que originó el accidente en cuestión.

Por otro lado, argumentaron que Roalca incurrió en negligencia debido a que tenía el control y custodia del área de reconstrucción, por lo que no debió permitir que el Colegio utilizara el lugar como parte de la excursión. Además, alegaron que hubo negligencia por parte de Roalca al no poner la rotulación necesaria para advertir del peligro existente y por no haber previsto los daños causados a Centeno Añeses. Asimismo, plantearon que GA-NIF, CSP y/o el arquitecto Acevedo Dávila y/o la arquitecta Norma Ilia Fuster Félix fueron negligentes en la medida que permitieron que los miembros de la excursión caminaran por el lugar de construcción con el conocimiento de la peligrosidad que ello representaba si las personas que por allí caminaban no llevaban la debida vestimenta o no tomaban las medidas de protección que requiere la ley. Por igual, sostuvieron que las aseguradoras respondían solidariamente por la negligencia de sus asegurados, conforme a los términos, límites y condiciones de las pólizas expedidas.

Por todo lo antes expuesto, argumentaron que la causa directa y próxima del accidente en cuestión fue la falta de cuidado, circunspección y la negligencia de todos y cada uno de los demandados, los cuales responderían solidariamente por los daños. En virtud de ello, solicitaron una partida de $390,000.00 por concepto de angustias y sufrimientos de Centeno Añeses, además de los daños físicos sufridos por esta. De igual forma, reclamaron una partida de $10,000.00 por los ingresos dejados de percibir de Centeno Añeses. Solicitaron, además, una partida de daños por la suma de $50,000.00 para cada uno de los hijos de Centeno Añeses, por concepto de angustias mentales de estos y gastos incurridos en el cuidado y asistencia de Centeno Añeses durante el prolongado tratamiento al que fue sometida como resultado de la caída.

El 7 de febrero de 2017, el Colegio presentó su *Contestación a Demanda.*[2] Entre las defensas afirmativas expuestas arguyó que la *Demanda* no aducía hechos constitutivos de una causa de acción en su contra y/o dejó de exponer una reclamación que justificara la concesión de un remedio. Asimismo, expuso que el accidente, de haber ocurrido, se debió en todo o en parte a la propia negligencia de Centeno Añeses y que los daños reclamados eran el resultado de actos de terceros. De igual forma, arguyó la existencia de prescripción, absorción de culpa y negligencia comparada.

Por su parte, el 7 de abril de 2017, el Municipio y QBE Insurance presentaron una *Contestación a la Demanda.*[3] Como defensas afirmativas, sostuvieron que los hechos alegados en la demanda no justificaban la concesión de un remedio. Asimismo, alegaron que la parte apelada no mitigó los daños. De otro lado, argumentaron que aplicaba la disposición de la ahora derogada Ley de Municipios Autónomos de Puerto Rico, Ley Núm. 81-1991, según enmendada, 21 LPRA sec. 4001 *et seq.*, que limitaba la partida de daños a un máximo de $75,000.00 y que el límite de la póliza de QBE Insurance era de la misma cantidad.

Posteriormente, el 6 de junio de 2017, la parte apelada enmendó la demanda.[4] En la misma, añadió como parte demandada a la Compañía de Turismo de Puerto Rico y modificó la descripción de los daños que continuaba sufriendo Centeno Añeses a consecuencia de la caída. En respuesta, el 25 de marzo de 2019, el Municipio y QBE Insurance sometieron su *Contestación Enmendada a Demanda*, en la cual expusieron las mismas defensas afirmativas que en su respuesta inicial.[5] El 31 de mayo de 2019, el Colegio presentó su *Contestación Enmendada a Demanda.*[6] En la misma adujo, esencialmente, las mismas defensas que

---

[2] Anejo II del recurso KLAN202200691, págs. 10-16.
[3] Anejo VII del recurso KLAN202200698, págs. 68-72.
[4] Anejo VIII del recurso KLAN202200698, págs. 73-79.
[5] Anejo IX del recurso KLAN202200698, págs. 80-85.
[6] Anejo XIV del recurso KLAN202200691, págs. 72-79.

en la *Contestación a Demanda* y sostuvo nuevamente su posición de que correspondía declarar No Ha Lugar la *Demanda*.

Así las cosas, el 13 de septiembre de 2018, el Municipio y QBE Insurance incoaron una *Demanda Contra Tercero* en contra de Triple S Insurance y/o Triple S Propiedad (Triple S).[7] Indicaron que, en la eventualidad de que fuese declarada con lugar la *Demanda* en contra de estos, el tribunal ordenara a Triple S a indemnizar o reembolsarles cualquier suma de dinero por la que ellos fuesen responsables.

En respuesta, el 14 de enero de 2019, Triple S instó una *Moción de Desestimación.*[8] En esencia, alegó que no procedía la demanda contra tercero por esta encontrarse prescrita. No obstante, ese mismo día, Triple S contestó la *Demanda Contra Tercero.*[9] Reiteró su alegación de prescripción y adujo que no venía obligada a responder por la negligencia que se le imputaba al Municipio, ya que la póliza que se emitió a favor de Roalca no cubría las alegaciones expuestas por la parte apelada en cuanto a ese Municipio. De igual forma, planteó que hubo una falta de notificación adecuada y oportuna, lo que constituyó un incumplimiento con las condiciones que surgían de la póliza. A consecuencia de lo antes expuesto, argumentó que no venía obligada a asumir la defensa de ninguno de los asegurados nombrados en la demanda ni a brindar cubierta por las alegaciones.

El 22 de enero de 2019, el Municipio presentó una *Oposición a Moción de Desestimación.*[10] En síntesis, arguyó que la solicitud de desestimación era improcedente ya que Triple S tenía una obligación contractual con este, la cual no estaba prescrita. Alegó que el mantener a Triple S en el caso evitaba que, luego de culminado el caso, se tuviese que presentar una acción independiente para reclamar el cumplimiento contractual; asunto que se evitaría si, al amparo de la economía procesal,

---

[7] Anejo X del recurso KLAN202200698, págs. 86-87.
[8] Anejo XII del recurso KLAN202200698, págs. 90-93.
[9] Anejo XIII del recurso KLAN202200698, págs. 94-97.
[10] Anejo XVI del recurso KLAN202200698, págs. 98-99.

se mantenía a la aseguradora en el caso y esta cumplía con su obligación contractual.

Atendida la solicitud de desestimación promovida por Triple S, el 19 de marzo de 2019, el Tribunal de Primera Instancia, emitió una *Resolución* mediante la cual declaró No Ha Lugar dicho petitorio.[11] Concluyó que le correspondía al tribunal, en su momento, determinar la existencia del daño, de la póliza de seguro y si hubo o no incumplimiento de contrato, así como adjudicar la responsabilidad, si alguna, que correspondiera.

Luego de varias incidencias procesales y la celebración de un juicio en su fondo, el 9 de mayo de 2022, el foro *a quo* emitió la *Sentencia* que nos ocupa*,* en la cual concedió a Centeno Añeses una compensación por daños físicos, sufrimientos y angustias mentales por la suma de $134,430.38.[12]

En particular, el Tribunal de Primera Instancia resolvió que, según la prueba presentada en el juicio, los responsables de los daños ocasionados a Centeno Añeses eran el Municipio y el Colegio. Esbozó que ambos fueron negligentes al permitir la entrada de personas ajenas a un proyecto en construcción, sin tomar medidas de seguridad. Por lo tanto, concluyó que el Municipio respondía como dueño de la obra y el Colegio respondía como organizador de las visitas guiadas. Expresó que ambos pudieron haber previsto los daños que sufrió Centeno Añeses limitando el acceso al interior de la Casa Bernier. No obstante, el tribunal entendió que, en el caso de autos, aplicaba la doctrina de asunción de riesgo y negligencia comparada. Esto, debido a que cuando Centeno Añeses llegó a la Casa Bernier pudo darse cuenta inmediatamente que la misma se encontraba en proceso de construcción, según señaló el foro juzgador. Añadió que este hecho fue corroborado en el juicio con su propio testimonio. El foro *a quo* indicó que, a pesar de ver los escombros y demás materiales de construcción, Centeno

---

[11] Anejo XV del recurso KLAN202200698, págs. 100-115.
[12] Anejo I del recurso KLAN202200698, págs. 1-52.

Añeses decidió entrar a la propiedad y continuar con la visita guiada. Por ello, el foro primario le atribuyó un 25% de responsabilidad a Centeno Añeses y un 75% al Municipio y al Colegio.

En virtud de lo anterior, el foro de origen le redujo a la cantidad otorgada el 25% por la negligencia de Centeno Añeses, equivalente a $33,607.59. Por lo que, se le impuso a la parte apelante el pago íntegro y solidario de $100,822.79 a favor de Centeno Añeses. Sobre la reclamación de pérdida de ingresos, el foro de instancia condenó al Colegio y al Municipio a pagar $4,500.00 a favor de Centeno Añeses. En cuanto a los hijos de esta, se les concedió la suma de $20,000.00 a cada uno por concepto de angustias y sufrimientos mentales.

Por otro lado, el foro sentenciador desestimó la demanda contra terceros por prescripción. En cuanto a las alegaciones de la demanda contra terceros, indicó que las partes estipularon la póliza de Triple S. Especificó que la referida póliza era una de seguro de responsabilidad comercial general en donde su asegurado principal era Roalca y el asegurado adicional era el Municipio, únicamente con relación a las operaciones del asegurado principal. Señaló que la vigencia de la póliza era del 10 de agosto de 2015 hasta el 10 de agosto de 2016. Determinó que el Municipio supo del accidente el 23 de enero de 2016. No obstante, expuso que este no presentó reclamación alguna en contra de Triple S, como aseguradora adicional de la póliza de responsabilidad comercial, hasta el 10 de septiembre de 2018. Expresó que el Municipio tenía un (1) año, desde la fecha en que ocurrió el suceso, para presentar su reclamación ante la aseguradora. Sin embargo, resolvió que no se proveyó evidencia de que el Municipio hubiera realizado una reclamación previa a la radicación de la demanda contra tercero. En su consecuencia, concluyó que la reclamación estaba prescrita.

Inconforme, el 2 de septiembre de 2022, el Municipio y QBE Insurance acudieron ante esta Curia, mediante el recurso KLAN202200698, señalando los siguientes errores:

Err[ó] el Honorable Tribunal de Primera Instancia, Sala Superior de Coamo[,] en su apreciaci[ó]n de la prueba y declarar Ha Lugar la demanda[.]

Err[ó] el Honorable Tribunal de Primera Instancia, Sala Superior de Coamo[,] en su apreciaci[ó]n sobre el porciento de negligencia comparada de la demandante & distribuci[ó]n de responsabilidades[.]

Err[ó] el Honorable Tribunal de Primera Instancia, Sala Superior de Coamo[,] al desestimar la demanda contra tercero[.]

Igualmente insatisfecho, el 31 de agosto de 2022, el Colegio acudió ante nos, mediante el recurso KLAN202200691, y esbozó los siguientes señalamientos de error:

Err[ó] y abus[ó] de su discreci[ó]n el Tribunal de Primera Instancia al concluir que la parte demandada incurri[ó] en un acto negligente por el cual se le deba imputar responsabilidad por los daños sufridos por la parte demandante y en ausencia de una estricta base de correspondencia con la prueba testifical y pericial desfilada.

Err[ó] y abus[ó] de su discreci[ó]n el Tribunal de Primera Instancia en la aplicación de la doctirna *[sic]* de negligencia comparada y descartar que la causa eficiente que caus[ó] los daños obedeci[ó] a la negligencia de la parte demandante conforme [a] la doctrina de asunci[ó]n de riesgo y absorci[ó]n de culpas[.]

Err[ó] y abus[ó] de su discreci[ó]n el Tribunal de Primera Instancia al concluir que el Colegio de Arqu[i]tectos Paisajistas incurri[ó] en un acto negligente por el cual se le deba imputar responsabilidad por los daños sufridos por la parte demandante por no haberse desfilado prueba de la existencia de un deber para con la propiedad del Municipio que generara responsabilidad y no imponer responsabilidad a los dem[á]s demandados conforme [a] la prueba desfilada y la doctrina de absorci[ó]n de culpas[.]

Erró el TPI en la concesi[ó]n de costas[.]

Luego de varias incidencias procesales, el 7 de septiembre de 2022, consolidamos los recursos KLAN202200691 y KLAN202200698, por versar sobre las mismas partes e impugnar el mismo dictamen.

El 8 de marzo de 2023, GA+NIF, CSP, el arquitecto Acevedo Dávila y su aseguradora MAPFRE PRAICO Insurance Company, comparecieron ante nos mediante *Alegato en Oposición a la Apelación Instada por el Municipio de Coamo*, *KLAN202200698*. En su alegato, sostuvieron que la *Sentencia* apelada claramente establecía que: (1) GA+NIF, CSP no promocionó o participó de alguna manera en la visita guiada de la Casa

Bernier; (2) El arquitecto Acevedo Dávila no coordinó la actividad; (3) El arquitecto Acevedo Dávila no abrió la Casa Bernier; y, (4) El arquitecto Acevedo Dávila participó como voluntario a solicitud del Colegio ya que es miembro de dicha entidad. Estos cuatro factores, unidos a la alegación de ausencia de prueba para establecer negligencia es por lo que estos arguyeron que correspondía declarar No Ha Lugar la apelación presentada.

Por su parte, el 29 de marzo de 2023, Roalca compareció ante esta Curia, mediante un escrito de igual nombre. En el mismo, arguyó que se solicitó la revisión de la *Sentencia* del foro primario bajo el argumento de que erró en la apreciación de la prueba y en la aplicación del derecho. Sin embargo, adujo que no se levantó ningún error específico en torno a la desestimación de la acción contra ellos. Por lo tanto, sostuvo que correspondía sostener el dictamen del foro primario y declarar No Ha Lugar la apelación instada.

Posteriormente, el 31 de marzo de 2023, Triple S presentó ante nos un escrito intitulado *Alegato del Apelado Triple S Propiedad para la Apelación KLAN202200698.* En el mismo, estableció que la desestimación de la demanda contra tercero a favor de Triple S no ameritaba revisión. Para justificar su argumento, sostuvo que la póliza que Triple S emitió a favor de Roalca contiene una cláusula de exoneración de responsabilidad en cuanto al Municipio. Por lo tanto, arguyó que no estaba obligado a defender ni a cubrir la reclamación interpuesta por el Municipio, pues la obligación contraída por Triple S se fundamentó en actuaciones y omisiones de Roalca en la ejecución de la obra de rehabilitación de la Casa Bernier y excluían las actuaciones y omisiones negligentes del Municipio. En vista de ello, sostuvo que procedía la desestimación de la demanda contra tercero.

Con el beneficio de la comparecencia de las partes, así como la transcripción de la prueba oral, procedemos a resolver.

## II

## A

El Artículo 1802 del Código Civil de Puerto Rico de 1930, 31 LPRA sec. 5141, da origen a la responsabilidad civil extracontractual.[13] El mismo establece que "[e]l que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado". *Íd.* Para que progrese una acción por daños y perjuicios, es necesario probar la ocurrencia de una acción u omisión culposa o negligente que ocasiona un daño, así como la existencia del nexo causal entre ambos. *Cruz Flores et al. v. Hosp. Ryder et al.*, 210 DPR 448 (2022).

El daño es "todo menoscabo material o moral causado contraviniendo una norma jurídica, que sufre una persona y del cual haya de responder otra". *Camacho Rivera v. Richard Mitchell, Inc.*, 202 DPR 34, 42 (2019), citando a J. Puig Brutau, *Fundamentos de Derecho Civil*, Barcelona, Ed. Bosch, 1983, T. 2, Vol. 3, pág. 92. Por otro lado, el daño patrimonial consiste en el menoscabo sobre el patrimonio del perjudicado que es valorable en dinero. *Sagardía de Jesús v. Hosp. Aux. Mutuo,* 177 DPR 484*,* 506 (2009). En cambio, los daños morales, son daños no patrimoniales que esencialmente afectan los derechos de la personalidad, física o moral, del ser humano. *Íd.* Por su parte, el dolor físico o corporal, las angustias mentales y los sufrimientos constituyen daños morales. *Íd.*, pág. 507.

Por otro lado, la culpa o negligencia es la falta del debido cuidado que consiste en no anticipar y prever las consecuencias racionales de un acto, o la omisión de un acto, que una persona prudente y razonable habría previsto en las mismas circunstancias. *Cruz Flores et al. v. Hosp. Ryder et al.,* supra*.* Ahora bien, el deber de previsión no se extiende a todo peligro imaginable, sino al que una persona prudente y razonable anticiparía. *Sucn. Pagán Berríos v. UPR y otros,* 206 DPR 317, 332 (2021)*.* De igual

---

[13] El derecho aplicable en el caso de autos se remite al Código Civil de Puerto Rico de 1930, 31 LPRA sec. 1 *et seq.* (derogado), toda vez que nos encontramos ante hechos ocurridos con anterioridad a la aprobación y vigencia del Código Civil de Puerto Rico de 2020, Ley Núm. 55-2020, 31 LPRA sec. 5311 *et seq.*

manera, tampoco es necesario que se haya anticipado la ocurrencia del daño en la forma precisa en que ocurrió; basta con que el daño sea una consecuencia natural y probable del acto u omisión negligente. *Camacho Rivera v. Richard Mitchell, Inc.*, supra, pág. 42.

Así pues, para fines de imputar negligencia, es forzoso identificar si la persona demandada podía prever, dentro de las circunstancias particulares pertinentes, que su acción u omisión podría causar algún daño. *Colón, Ramírez v. Televicentro de P.R.*, 175 DPR 690, 706 (2009). Cónsono con el deber de previsión, una persona es responsable de las consecuencias probables de sus actos. *Blás v. Hosp. Guadalupe,* 146 DPR 267, 298 (1998). De ahí que se reconozca que la mera ocurrencia de un accidente no constituye prueba de la negligencia de la persona demandada en una acción sobre daños y perjuicios. *Admor. F.S.E. v. Almacén Ramón Rosa,* 151 DPR 711, 724 (2000).

Es de particular importancia para la disposición de este recurso acentuar que, respecto a la responsabilidad civil extracontractual de los establecimientos comerciales, nuestro estado de derecho es enfático al disponer que, si bien corresponde a sus propietarios mantener dicho establecimiento en condiciones de seguridad, estos no son garantizadores de todo tipo de riesgo, sino de aquél que razonablemente pueda resultar de la operación del negocio. Este deber implica que el dueño u operador debe ejercer un cuidado razonable para mantener la seguridad de las áreas accesibles al público, para que, de ese modo, se evite que sus clientes sufran algún daño. *Ramos v. Wal-Mart,* 165 DPR 510 (2005); *Colón y otros v. K-mart y otros,* 154 DPR 510 (2001); *Goose v. Hilton Hotels,* 79 DPR 523 (1965). Así, el operador de un comercio es responsable de los daños sufridos por su clientela, solo cuando los mismos son ocasionados por condiciones peligrosas existentes en el lugar y conocidas por el propietario, o cuyo conocimiento le sea atribuible. *Ramos v. Wal-Mart,* supra; *Cotto v. C.M. Ins. Co,* 116 DPR 644 (1985). De ningún modo significa ello que el dueño de un establecimiento comercial asume una responsabilidad

absoluta frente a cualquier daño sufrido por sus clientes. Para que se le imponga responsabilidad, quien alegue haber sufrido un daño, está llamado a demostrar, mediante preponderancia de la prueba y a luz de los referidos criterios, que el dueño del establecimiento no ejerció el debido cuidado para la seguridad del local. Así, el demandante está en la obligación de poner al tribunal competente en condiciones tales que pueda emitir una determinación clara y específica de la negligencia del dueño del local. *Colón y otros v. K-mart y otros,* supra*; Cotto v. C.M. Ins. Co.,* supra.

Cabe resaltar, que para que exista responsabilidad como consecuencia de una omisión hay que considerar si: (1) existe o no un deber jurídico de actuar por parte de quien se alega que cometió el daño; (2) si de haberse realizado el acto omitido se hubiere evitado el daño. *Soc. Gananciales v. G. Padín Co., Inc.,* 117 DPR 94 (1986).

Asimismo, el citado Artículo 1802 del Código Civil de Puerto Rico de 1930, *supra*, reconoce la defensa de negligencia comparada al disponer que "[l]a imprudencia concurrente del perjudicado no exime de responsabilidad, pero conlleva la reducción de la indemnización". Sobre dicha defensa, el Tribunal Supremo de Puerto Rico ha establecido que su efecto es atenuar la responsabilidad de la parte demandada, tomando en cuenta "el grado de negligencia desplegado por la parte demandante que contribuye a la producción de sus propios daños". *Colón Santos v. Coop. Seg. Mult. P.R.,* 173 DPR 170, 178 (2008). Es decir, la defensa de negligencia comparada no pretende eximir de responsabilidad a la parte demandada, sino reducir la misma. *Íd.*

Ahora bien, en aquellos casos en que se alegue y fundamente la defensa de negligencia comparada, "el tribunal está llamado a individualizar las indemnizaciones por daños, colocando el rigor económico en las partes conforme a la proporción de su descuido o negligencia". *Íd.*, citando a H.M. Brau del Toro, *Los daños y perjuicios extracontractuales en Puerto Rico*, 2da ed., San Juan Pubs. JTS, 1986, Vol. I, pág. 410. De esta forma, el juzgador, luego de analizar todos los hechos y circunstancias del caso, tiene

la tarea de "determinar el monto de la compensación y el porciento de responsabilidad que corresponde a cada parte, restando de la compensación total la fracción de responsabilidad correspondiente a la parte demandante". *Colón Santos v. Coop. Seg. Mult. P.R.*, supra, pág. 178.

**B**

La doctrina de absorción de culpa se puede aplicar cuando existe negligencia comparada, particularmente cuando las actuaciones imprudentes del demandante fueron lo que lo colocó en una situación de peligro que causó daño. *Toro Lugo v. Ortiz Martínez*, 113 DPR 56 (1982). Sin embargo, la aplicación de esta norma ocurre solo en instancias en las que existe una marcada e indisputable desproporción entre la distribución de culpas de la parte demandante y la demandada. Cuando esto ocurre, la distribución de negligencia con la mayor proporción absorbe la negligencia y responsabilidad en menor proporción de la otra parte. *Cárdenas Maxán v. Rodríguez Rodríguez*, 125 DPR 702 (1990). De forma simplificada, aquél que haya sido negligente en mayor grado absorbe la culpa del otro, quedando este último libre de responsabilidad. L. Cancel Méndez, *Doctrina de la Absorción de Culpas en la Responsabilidad Civil Extracontractual en Puerto Rico*, 38 Rev. Der. P.R. 243, 243-44 (1999).

Para que se ponga en práctica la doctrina, se requiere una desproporción incuestionable de responsabilidad entre las partes. La diferencia entre los niveles de culpa debe ser preponderante, pero no se ha predispuesto un porciento exacto de culpas asignadas que inmediatamente active la doctrina. Por lo tanto, la aplicación de la doctrina ha quedado al arbitrio de los tribunales, a los que, entonces, le corresponde determinar caso a caso qué grado o porciento de responsabilidad representa uno tan ínfimo para ser absorbido por el mayor. C. J. Irizarry Yunqué, *Responsabilidad Civil Extracontractual*, Panamericana Formas e Impresos S.A., 2009. Esencialmente, queda pendiente a la discreción del juzgador el determinar si aplica a un caso determinado la doctrina de

absorción de culpas y si la distribución de responsabilidad entre las partes la justifica.

**C**

Nuestro Tribunal Supremo ha establecido que los tribunales apelativos no debemos intervenir con la valoración de daños que realiza el foro primario, salvo cuando la cuantía concedida resulte ridículamente baja o exageradamente alta. *Santiago Montañez v. Fresenius Medical,* 195 DPR 476 (2016); *Meléndez Vega v. El Vocero de PR,* 189 DPR 123, 203 (2013); *Rodríguez et al. v. Hospital et al.,*186 DPR 889, 943 (2012); *Riley v. Rodríguez de Pacheco*, 119 DPR 762 (1987). La base para esa estimación lógicamente es la prueba aportada, cuya apreciación por el foro primario está cobijada por una presunción de que fue correcta. Regla 42.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 42.2; *Blás v. Hosp. Guadalupe*, 146 DPR 267, 339 (1998). La ausencia de proporcionalidad entre los daños probados y la indemnización concedida es base para variar, en apelación, una indemnización. Si la indemnización se ajusta a la concedida en casos anteriores similares, ajustada al valor presente, se presume razonable y no debe ser alterada en apelación. *Herrera, Rivera v. S.L.G. Ramírez-Vicéns*, 179 DPR 774 (2010).

Asimismo, el más Alto Foro de Puerto Rico ha reconocido que la tarea judicial de estimar y valorar los daños resulta ser difícil y angustiosa porque no existe un sistema de computación que permita llegar a un resultado exacto con el cual todas las partes queden completamente complacidas y satisfechas. *Santiago Montañez v. Fresenius Medical,* supra; *Herrera Rivera v. S.L.G. Ramírez-Vicéns*, supra. Es por ello que los foros revisores guardarán deferencia a las valorizaciones de daños que hagan los foros de primera instancia, puesto que son estos los que tienen contacto directo con la prueba testifical presentada y, por ende, están en mejor posición para emitir un juicio sobre la valorización de daños. *Santiago Montañez v. Fresenius Medical,* supra; *Rodríguez et al. v. Hospital, et al.*, supra; *Herrera, Rivera v. S.L.G. Ramírez-Vicéns*, supra. No

obstante, lo anterior, nuestro Tribunal Supremo ha advertido a los jueces y las juezas sobre la importancia de detallar en sus dictámenes los casos que se utilicen como referencia o punto de partida para la estimación y valoración de daños y el cómputo realizado para establecer las cuantías que se concedan. *Santiago Montañez v. Fresenius Medical,* supra.

Al medir los daños en un caso, el juzgador debe hacerlo sobre una estricta base de correspondencia con la prueba, procurando siempre que la indemnización no se convierta en una industria y que no lesione la economía. Es por ello que se ha dicho que el deber de los jueces y juezas tiene el propósito de conservar el sentido remediador y no punitivo que permea la compensación concedida en concepto de daños y perjuicios. *S.L.G. v. F.W. Woolworth & Co.*, 143 DPR 76, 81 (1997); *Rivera v. Tiendas Pitusa, Inc.*, 148 DPR 695 (1999). En cuanto a la prueba documental, el tribunal revisor se encuentra en igual posición que el Tribunal de Primera Instancia y está facultado para apreciar la prueba basándose en su propio criterio. *In re: García Ortiz*, 187 DPR 507, 521 (2013); *Dye-Tex P.R., Inc. v. Royal Ins. Co.*, *P.R.,* 150 DPR 658, 662 (2000).

Ahora bien, quien solicita modificar la cuantía concedida tiene el peso de la prueba. *Meléndez Vega v. El Vocero de PR*, supra, pág. 203; *Rivera Rodríguez v. Tiendas Pitusa, Inc.*, supra, pág. 700. De este modo, la parte que solicita la modificación de la indemnización concedida por el foro de instancia deberá demostrar que, en efecto, existen circunstancias que así lo justifican. En este sentido, la mera alegación sobre la improcedencia de las compensaciones concedidas es insuficiente para que los foros apelativos modifiquen las mismas. Por lo tanto, solo cuando se acredite que la cuantificación de los daños es irrazonable es que procede la revisión por los foros apelativos. *Albino v. Ángel Martínez, Inc.*, 171 DPR 457 (2007). El derecho a ser compensado no puede ser derrotado meramente porque en ocasiones el cómputo en cuestión pueda resultar un tanto especulativo. Lo importante es que la compensación concedida esté basada en la prueba y que se mantenga el sentido remediador que

persigue el ordenamiento. *Rivera v. Tiendas Pitusa, Inc.*, supra. De conformidad con ello, también precisa destacar que en *Meléndez Vega v. El Vocero de PR*, supra, nuestro Tribunal Supremo reiteró que, a pesar de que la tarea de valoración de daños puede generar múltiples criterios, tal tarea debe residir, dentro de lo posible, en el juicio del juzgador de los hechos, enmarcado dentro de un análisis de razonabilidad. De no existir algún error manifiesto, parcialidad o prejuicio en tal apreciación, no corresponde nuestra intervención. *Íd.*

**D**

Sabido es que este Tribunal Apelativo actúa, esencialmente, como foro revisor. *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 770 (2013). Es por ello que, nuestra encomienda principal es examinar cómo los tribunales inferiores aplican el Derecho a los hechos particulares de cada caso. *Íd.* Cónsono con lo anterior, el desempeño de nuestra función revisora se fundamenta en que el Tribunal de Primera Instancia desarrolle un expediente completo que incluya los hechos que haya determinado ciertos a partir de la prueba que se le presentó. *Íd.* Es decir, nuestra función de aplicar y pautar el Derecho requiere saber cuáles son los hechos, tarea que corresponde, primeramente, al foro de instancia. *Íd.* Como foro apelativo, no celebramos juicios plenarios, no presenciamos el testimonio oral de los testigos, no dirimimos credibilidad y no hacemos determinaciones de hechos. *Íd.* Esa es la función de los tribunales de primera instancia. *Íd.*

Por el contrario, al momento de analizar prueba documental, prueba pericial o testimonios de testigos ofrecidos mediante declaraciones escritas, estamos en la misma posición que el Tribunal de Primera Instancia. *Ortiz et al. v. S.L.G. Meaux*, 156 DPR 488, 495 (2002). Así, "el Tribunal Apelativo tendrá la facultad para adoptar su propio criterio en la apreciación y evaluación de la prueba pericial, y hasta para descartarla, aunque resulte técnicamente correcta". *Santiago Ortiz v. Real Legacy et al.*, 206 DPR 194, 219 (2021), citando a *González Hernández v. González*

*Hernández*, 181 DPR 746, 777 (2011). Asimismo, es norma básica que las conclusiones de derecho son revisables en su totalidad por el foro apelativo. *Dávila Nieves v. Meléndez Marín*, supra, pág. 770. Ahora bien, como norma general, los tribunales apelativos aceptan como correctas las determinaciones de hechos de los tribunales inferiores, así como su apreciación sobre la credibilidad de los testigos y el valor probatorio de la prueba presentada en la sala. *Íd.*, pág. 771.

En nuestro ordenamiento jurídico no se favorece la intervención de los foros apelativos para revisar la apreciación de la prueba, la adjudicación de credibilidad o las determinaciones de hechos formuladas por el Tribunal de Primera Instancia, en ausencia de pasión, prejuicio, parcialidad o error manifiesto. *Sucn. Mena Pamias et al. v. Meléndez et al.*, 2023 TSPR 108, 212 DPR ___ (2023); *Pueblo v. Hernández Doble*, 210 DPR 850 (2022); *Santiago Ortiz v. Real Legacy et al.*, supra. Ello, debido a que el foro de instancia está en mejor posición que un tribunal apelativo para llevar a cabo esta importante tarea judicial. *Dávila Nieves v. Meléndez Marín*, supra, pág. 771.

En consideración a la norma de corrección que cobija a las determinaciones realizadas por el Tribunal de Primera Instancia, cuando una parte peticionaria señala errores dirigidos a cuestionar la apreciación o suficiencia de la prueba, la naturaleza del derecho apelativo requiere que esta ubique al foro revisor en tiempo y espacio de lo ocurrido en el foro primario. Ello se logra utilizando alguno de los mecanismos de recopilación de prueba oral, como lo son: (1) transcripción de la prueba, (2) exposición estipulada o (3) exposición narrativa. *Pueblo v. Pérez Delgado*, 211 DPR 654 (2023). Los tribunales de mayor jerarquía no pueden cumplir a cabalidad su función revisora sin que se le produzca, mediante alguno de estos mecanismos, la prueba que tuvo ante sí el foro primario. *Íd.*

**E**

La Regla 44.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 44.1, regula la concesión de costas y honorarios. En lo pertinente, dispone lo siguiente:

(a) *Su concesión. -* Las costas le serán concedidas a la parte a cuyo favor se resuelva el pleito o se dicte sentencia en apelación o revisión, excepto en aquellos casos en que se disponga lo contrario por ley o por estas reglas. Las costas que podrá conceder el tribunal son los gastos incurridos necesariamente en la tramitación de un pleito o procedimiento que la ley ordena o que el tribunal, en su discreción, estima que una parte litigante debe reembolsar a otra.

(b) *Cómo se concederán. -* La parte que reclame el pago de costas presentará al tribunal y notificará a la parte contraria, dentro del término de diez (10) días contados a partir del archivo en autos de copia de la notificación de la sentencia, una relación o memorándum de todas las partidas de gastos y desembolsos necesarios incurridos durante la tramitación del pleito o procedimiento. El memorándum de costas se presentará bajo juramento de parte o mediante certificación del abogado o abogada y consignará que, según el entender de la parte reclamante o de su abogado o abogada, las partidas de gastos incluidas son correctas y que todos los desembolsos eran necesarios para la tramitación del pleito o procedimiento. Si no hubiese impugnación, el tribunal aprobará el memorándum de costas y podrá eliminar cualquier partida que considere improcedente, luego de conceder a la parte solicitante la oportunidad de justificarlas**.** Cualquier parte que no esté conforme con las costas reclamadas podrá impugnarlas en todo o en parte, dentro del término de diez (10) días contados a partir de aquel en que se le notifique el memorándum de costas. El tribunal, luego de considerar la posición de las partes, resolverá la impugnación. La resolución del Tribunal de Primera Instancia podrá ser revisada por el Tribunal de Apelaciones mediante el recurso de *certiorari*. De haberse instado un recurso contra la sentencia, la revisión de la resolución sobre costas deberá consolidarse con dicho recurso. 32 LPRA Ap. V, R. 44.1.

[…]

La Regla antes citada tiene una función reparadora. *Aponte v. Sears Roebuck de P.R., Inc.*, 144 DPR 830, 848 (1998); *J.T.P. Dev. Corp. v. Majestic Realty Corp.,* 130 DPR 456, 460 (1992). Tiene como propósito resarcir a la parte victoriosa en los gastos necesarios y razonables en que se vio obligada a incurrir por motivo del pleito. *Auto Servi, Inc. v. E.L.A.,* 142 DPR 321, 326 (1997); *Ferrer Delgado v. Tribunal Superior,* 101 DPR 516, 517 (1973). Por tal razón, impera la norma de que, una vez reclamadas por la parte prevaleciente, la imposición de costas es

"mandatoria". *J.T.P. Dev. Corp. v. Majestic Realty Corp,* supra, págs. 460-461; *Colondres Vélez v. Bayrón Vélez,* 114 DPR 833, 839 (1983).

En *Garriga, Jr. v. Tribunal Superior,* 88 DPR 245 (1963), el Tribunal Supremo resolvió que las costas no son todos los gastos que ocasiona la litigación, sino los gastos: (a) necesarios; (b) incurridos; y (c) razonables. Su razonabilidad se extenderá dentro de la realidad económica de Puerto Rico, y en cuanto a los gastos personales, además, se tendrá en cuenta la condición económica de las personas concernidas (testigos y litigantes). No se aprobarán gastos innecesarios, superfluos o extravagantes. *Íd.*, págs. 256-257.

Es norma reiterada que no se admiten como costas los gastos ordinarios de las oficinas de abogado o abogada, tales como sellos de correo, materiales de oficina y transcripciones de récords de vistas cuando estas se solicitan por ser convenientes, pero no necesarias. *Andino Nieves v. A.A.A.,* 123 DPR 712, 716 (1989); *Pereira v. I.B.E.C.,* 95 DPR 28, 78 (1967).

Conforme a lo dispuesto en la Regla 44.1(b) de Procedimiento Civil, *supra,* cualquier parte que no esté conforme con las costas podrá impugnar las mismas, en todo o en parte, dentro del término de diez (10) días, contados a partir de la notificación del memorando de costas.

Respecto al recobro por gastos de perito, el Tribunal Supremo ha indicado que, en el caso particular de los expertos contratados por las partes, el rembolso opera por vía de excepción y se concederán únicamente cuando ello esté plenamente justificado. *Maderas Tratadas v. Sun Alliance et al.,* 185 DPR 880 (2012); *Andino Nieves v. A.A.A.,* supra; *Toppel v. Toppel,* 114 DPR 16 (1983). Para hacer esta concesión, el Tribunal deberá pasar juicio sobre si procede o no el pago de dichos honorarios, y evaluará la naturaleza y utilidad del perito a la luz de los hechos particulares del caso. *Maderas Tratadas v. Sun Alliance et al.,* supra; *Rodríguez Cancel v. A.E.E.,* 116 DPR 443 (1985); *Toppel v. Toppel,* supra. Al hacer su evaluación el Tribunal deberá examinar la naturaleza de la preparación del perito utilizado por la parte y la utilidad de su

intervención en el caso. Ello así, se descartará la concesión del rembolso si la utilización del perito resultare irrelevante, inmaterial o innecesaria en la tramitación del caso de la parte que solicita el rembolso. *Maderas Tratadas v. Sun Alliance et al.*, supra; *Toppel v. Toppel*, supra.

En ausencia de abuso de discreción, este Tribunal de Apelaciones no intervendrá con la determinación hecha por el tribunal que otorgue las costas por uso de un perito. *Andino Nieves v. A.A.A.*, supra. Sin embargo, es doctrina establecida que de un foro apelativo entender que medió prejuicio, pasión, parcialidad o error manifiesto, se intervendrá con las determinaciones del juzgador de los hechos. *Arce Bucetta v. Motorola*, 173 DPR 516 (2008); *Rivera y otros v. Bco. Popular*, 152 DPR 140 (2000).

A la luz de la normativa antes expuesta, procedemos a disponer de la controversia ante nuestra consideración.

**III**

El Municipio esgrime en su segundo señalamiento de error que el foro primario erró en la asignación del porciento de negligencia comparada y en la distribución de responsabilidades. Hemos examinado cuidadosamente el trámite procesal, el expediente ante nos, la transcripción de la prueba oral, así como la norma aplicable, y concluimos que el foro *a quo* no incidió en su proceder. Nos explicamos.

Sabido es que, ante una defensa de negligencia comparada, el tribunal debe dilucidar el monto de la compensación y el porciento de responsabilidad que corresponde a cada parte, restando de la compensación total la fracción de responsabilidad correspondiente a la parte demandante. La doctrina de negligencia comparada reconoce que la imprudencia concurrente de la persona perjudicada no la exime de responsabilidad, pero conlleva la reducción de su indemnización. Una vez se establezca que aplica esta defensa, el tribunal está llamado a individualizar las indemnizaciones por los daños, tomando en consideración la proporción de su descuido o negligencia. En el caso de autos, el foro de instancia aplicó la doctrina de negligencia comparada ya

que, Centeno Añeses participó voluntariamente de la actividad. De igual forma, cuando llegó a la Casa Bernier observó que era una obra en construcción y, aun así, decidió continuar participando del recorrido y entrar a la propiedad.

Surge de la transcripción de la prueba oral, que Centeno Añeses iba caminando hacia la salida y tropezó con lo que era una varilla que había en el piso. Al esto ocurrir, perdió el balance, trató de agarrarse de un alambre que estaba amarrado a la varilla y a la puerta de la salida, pero no tuvo éxito y se cayó al suelo. Según el testimonio de Centeno Añeses, la varilla no era fácilmente perceptible y medía aproximadamente una pulgada y media. A consecuencia de la caída, Centeno Añeses sufrió una fractura conminuta, poli fragmentaria en la cabeza del húmero y una fractura en la rodilla izquierda, en la patela o rótula. Esta información fue confirmada a través del testimonio provisto en el juicio por el Dr. Carlos Grovas Badrena (Dr. Grovas Badrena).

Luego de examinar los testimonios, tanto del Dr. Grovas Badrena como el de Centeno Añeses, concurrimos con el foro de instancia en la adjudicación del porciento de negligencia. La parte apelante no ha puesto al tribunal en posición de determinar que la imposición de responsabilidad a la parte apelante fue errónea o fue mediada por prejuicio, pasión, parcialidad o error manifiesto. Si bien es cierto que la mera ocurrencia de un accidente no es suficiente para establecer negligencia, también es cierto que la parte apelante debió rebatir el testimonio pericial o establecer evidencia fehaciente para rebatir la credibilidad de los testimonios ofrecidos en evidencia. Del expediente y la prueba oral se desprende que, al momento de los hechos, la Casa Bernier se encontraba en proceso de reconstrucción y que se permitió la entrada de los visitantes sin tomar las correspondientes medidas de seguridad. Era previsible que una persona podía sufrir un accidente al permitírsele la entrada a la propiedad en construcción. El foro primario le atribuyó un 25% de responsabilidad a Centeno Añeses y un 75% al Municipio y al Colegio. Dicho foro adjudicó el

porciento de negligencia comparada basándose en los testimonios provistos en el juicio y sobre los mismos no apreciamos que haya habido algún error en la adjudicación de credibilidad. Por todo lo antes mencionado, colegimos en que no se cometió el error señalado.

En cuanto a la distribución de responsabilidades, el Municipio arguye que el foro de instancia erró en la manera en que se evaluó la distribución de responsabilidades al excluir a otras partes que estuvieron involucradas en la planificación, logística de la actividad y control del lugar. Sobre este particular, tampoco le asiste la razón ya que en la *Sentencia* emitida por el foro *a quo* se detalló claramente el motivo detrás de excluir al resto de las partes en la distribución de responsabilidades.

Respecto a la responsabilidad de Roalca, el foro primario concluyó que la parte apelante, en su turno de prueba, no presentó evidencia de que Roalca hubiera autorizado la visita de los participantes a la actividad o que tuviera conocimiento de esta antes del 23 de enero de 2016. De igual forma, el foro apelado concluyó que, a base del testimonio presentado en el juicio por el arquitecto Acevedo Dávila, se desprendió que no hubo una notificación adecuada a Roalca sobre la ocurrencia de la excursión o evento en la propiedad. Tampoco se demostró que este haya autorizado la entrada de personas ajenas a la construcción del proyecto de la Casa Bernier. Por consiguiente, no tenía autoridad para consentir a la entrada de personas ni poner a disposición la Casa Bernier para la actividad.

Respecto a GA+NIF, CSP y el arquitecto Acevedo Dávila, el foro primario estableció en su *Sentencia* que GA+NIF, CSP tenía un contrato de servicios profesionales con el Municipio que consistía en observar los trabajos realizados por Roalca. Según la declaración del arquitecto Acevedo Dávila y el texto del contrato, la GA+NIF, CSP se obligó a observar los trabajos de construcción de la Casa Bernier. De igual forma, como parte de sus funciones, tenía reuniones y visitas semanales al proyecto. No obstante, el día del accidente, el 23 de enero de 2016, no se estaban realizando trabajos de construcción en los predios de la Casa Bernier. El

arquitecto Acevedo Dávila fungió como guía voluntario del Colegio para dar el recorrido de la zona histórica del Municipio. Según el testimonio provisto en corte, y al cual el foro juzgador le otorgó credibilidad, el arquitecto Acevedo Dávila no coordinó la actividad ni tuvo participación en la decisión del Colegio de visitar la Casa Bernier como parte de una excursión. Por lo que, el tribunal concluyó que no se le podía atribuir negligencia a GA+NIF o al arquitecto Acevedo Dávila por no proveer equipo de seguridad o permitir la entrada de los participantes de la excursión arquitectónica a la Casa Bernier. De igual modo, en el *Contrato de Servicios Profesionales* entre las partes no surgía ninguna cláusula que obligara a la GA+NIF, CSP a supervisar u observar alguna actividad que no fuese la obra de construcción. De la prueba presentada en el juicio, tampoco surgió que GA+NIF, CSP hubiese promocionado o participado de alguna manera en las visitas guiadas de la Casa Bernier.

Al eliminar a las partes previamente mencionadas, el foro primario le atribuyó un 25% de responsabilidad a Centeno Añeses y un 75% al Municipio y al Colegio. Concurrimos con esta distribución de porciento de negligencia ya que, según la norma jurídica previamente esbozada, corresponde la reducción de la indemnización otorgada a la parte afectada, en este caso Centeno Añeses, cuando esta contribuye a la ocurrencia de su propio daño. Entendemos que el porcentaje reducido fue uno justo y apropiado conforme a las circunstancias del presente caso. Por todo lo antes expuesto, concluimos que el foro primario no erró en la asignación del porciento de negligencia comparada, ni en la distribución de responsabilidades.

De otro lado, el Colegio arguyó, como primer, segundo y tercer señalamiento de error, un abuso de discreción por parte del foro *a quo* en la determinación de negligencia e imputación de responsabilidad y en la aplicación de negligencia comparada al descartar que la causa eficiente que provocó los daños obedeció a la negligencia de la parte apelada, conforme a la doctrina de asunción de riesgo y absorción de culpa. De igual

forma, planteó que el foro primario abusó de su discreción al concluir que este incurrió en un acto negligente por el cual se le debía imputar responsabilidad por los daños sufridos por la parte apelada y no imponer responsabilidad a los demás apelantes, conforme a la prueba desfilada y la doctrina de absorción de culpa. Luego de hacer un estudio exhaustivo del expediente y de la prueba oral presentada en el juicio, colegimos que no le asiste la razón al Colegio en ninguno de sus tres planteamientos. Nos explicamos.

Sabido es que, la negligencia se define como la falta del debido cuidado que consiste en no anticipar y prever las consecuencias racionales de un acto u omisión, que una persona prudente y razonable hubiera previsto en las mismas circunstancias. En el caso de autos, el Tribunal de Primera Instancia concluyó que los responsables de los daños ocasionados a Centeno Añeses eran el Municipio y el Colegio. Surge del dictamen apelado que el foro de origen fundamentó su decisión en la negligencia desplegada por el Municipio y el Colegio al coordinar y permitir la entrada de personas ajenas a un proyecto que estaba en plena construcción sin tomar las medidas de seguridad necesarias para evitar daños. Especificó que el Municipio incurrió en responsabilidad como dueño de la obra y coordinador de la actividad, lo cual fue un hecho estipulado por las partes,[14] mientras que el Colegio fue responsable como organizador de las visitas guiadas. Determinó que la caída sufrida por Centeno Añeses pudo haber sido prevista y, por tanto, evitada, limitando el acceso de los participantes al interior de la Casa Bernier.

Al igual que el tribunal de instancia, luego de revisar la transcripción de la prueba oral, concluimos que la caída de algún participante de la actividad era un daño previsible dentro de las circunstancias en que se dieron los hechos. Ahora bien, el foro juzgador no le atribuyó la totalidad de la responsabilidad al Municipio y al Colegio, pues entendió que aplicaba la doctrina de asunción de riesgo y negligencia comparada debido a que

---

[14] Véase, Anejo 1 del recurso, pág. 148.

Centeno Añeses participó voluntariamente de la actividad. Asimismo, dicho foro le atribuyó responsabilidad a esta última porque, cuando llegó a las instalaciones de la propiedad, observó que era una obra en construcción y, aún así, entró al lugar sin tomar las debidas precauciones. Del expediente se desprende que, a plena vista, se observaba material de acero y hormigón en el piso, una grúa, y la estructura de la propiedad en armazón. De igual forma, surge del testimonio de Centeno Añeses que la propiedad se encontraba "desmantelada" y había escombros en el piso, al igual que una escalera sin barandas. Aún así, Centeno Añeses decidió entrar a la parte del patio interior de la Casa Bernier y continuar con la visita guiada. Nadie la obligó a continuar con la excursión. La decisión de rehusarse a entrar a la mencionada propiedad no conllevaba una pérdida económica para Centeno Añeses debido a que esta no pagó por asistir a la actividad. Tomando esto en consideración, el foro de origen le atribuyó un 25% de responsabilidad a Centeno Añeses y un 75% al Municipio y al Colegio.

En el juicio, la parte apelada presentó el testimonio del ingeniero José Centeno fundamentado en su experiencia en diseño, inspección y supervisión de obras de construcción, y alegadas violaciones a las disposiciones del Código Federal de Regulaciones del Departamento del Trabajo Federal, Administración de Seguridad y Salud Ocupación (OSHA). Sobre este asunto, el foro primario aclaró que, a pesar de que las disposiciones de OSHA no eran aplicables al presente caso, le concedió valor al testimonio del ingeniero basado en su experiencia como supervisor de obras de construcción gubernamentales. Al foro *a quo* le mereció credibilidad dicho testimonio, particularmente cuando el ingeniero manifestó categóricamente que, en un proyecto que solo tiene permiso de construcción, no un permiso de uso, no se permite la entrada de personas ajenas a la construcción por los riesgos que esto conlleva. Más aún, sin darle una orientación sobre las medidas de seguridad que tienen que seguir en el área del proyecto, sin equipo de protección y sin limitar las áreas a visitar.

Luego de hacer un estudio del expediente y la transcripción de la prueba oral, entendemos que la determinación del foro primario fue la correcta de acuerdo con la prueba desfilada en el juicio y la norma jurídica vigente. No percibimos ningún tipo de prejuicio, error o imparcialidad en la determinación del foro primario. Por lo tanto, concurrimos en que no se cometieron los errores esbozados.

En cuanto a la alegación de que en este caso correspondía aplicar la doctrina de absorción de culpa, no le asiste la razón. Para que se aplique la mencionada doctrina, se requiere una desproporción incuestionable de responsabilidad entre las partes. La diferencia entre las culpas debe ser preponderante, pero no existe un porcentaje predispuesto que obligue al tribunal a utilizar la doctrina. Por lo tanto, la aplicación de la doctrina ha quedado al arbitrio de los tribunales, a los que corresponde determinar caso a caso qué grado o porciento de responsabilidad representa uno tan íntimo para ser absorbido por el mayor. En esencia, queda a la discreción del juzgador el resolver si aplica a un caso determinado la doctrina de absorción de culpa y si la distribución de responsabilidad entre las partes la justifica.

Luego de evaluar el expediente y la prueba oral presentada en el juicio en su fondo, colegimos que no hubo error en la aplicación de la doctrina de negligencia comparada utilizada por el *foro a quo*. En el caso de autos, la distribución de responsabilidad entre las partes fue debidamente justificada por el foro de instancia. En la *Sentencia* emitida se justificó la reducción de indemnización en el importe otorgado a Centeno Añeses debido a su propia negligencia, al esta asumir el riesgo de continuar con una excursión en un lugar visiblemente bajo construcción. Asimismo, se justificó un mayor grado de responsabilidad al Colegio y al Municipio por estos planificar y promocionar una actividad en una propiedad que se encontraba en construcción, sin tomar las medidas de precaución necesarias para evitar daños previsibles. Por lo tanto, correspondía que dicho foro ejerciera su discreción al establecer los porcientos de

responsabilidad, como correctamente lo hizo. En virtud de ello, colegimos que no se cometió el error esbozado.

Por otro lado, el Municipio esgrime en su primer error que el foro primario erró en su apreciación de la prueba. No le asiste la razón. Veamos.

Conforme al testimonio del Dr. Grovas Badrena, Centeno Añeses tiene una disminución de 6% de sus funciones fisiológicas causada como consecuencia directa de la caída que sufrió durante la excursión. Este hecho, unido con la prueba presentada en juicio, dio paso a la imposición de daños físicos, sufrimientos y angustias mentales, la pérdida de ingresos y la compensación otorgada a los hijos de la víctima.

Según señalamos previamente, este Foro apelativo no revisará las determinaciones de hechos realizadas por el Tribunal de Primera Instancia, en ausencia de pasión, prejuicio o error manifiesto. De un examen de dichos criterios, no apreciamos o advertimos las circunstancias que pudieran sostener nuestra intervención en este caso. De las determinaciones del foro primario no surge pasión, prejuicio o error manifiesto. Las conclusiones y determinaciones de hechos realizadas por el foro apelado son cónsonas con los testimonios ofrecidos en el juicio a los cuales el foro primario les otorgó entera credibilidad. Nada hay en los planteamientos de la parte apelante que nos haga intervenir con el curso decisorio tomado por el foro de origen. Por consiguiente, el planteamiento de error sobre la apreciación de la prueba y la imposición de responsabilidad son inmeritorios. Luego de estudiar exhaustivamente el expediente y la transcripción de la prueba oral de las vistas, concurrimos con la apreciación de la prueba hecha por el foro de instancia. Por lo tanto, concluimos que el error esbozado por el Municipio no se cometió.

Por otro lado, el Municipio esbozó en su tercer señalamiento de error que el foro apelado erró al desestimar la demanda contra tercero incoada en contra de Triple S. Particularmente, solicitó que se adjudicara en derecho las alegaciones de dicha acción, ya que el fundamento por el cual el foro primario desestimó la demanda fue declarado sin lugar mediante la

*Resolución* emitida el 19 de marzo de 2019, en la cual se determinó que la demanda contra Triple S no estaba prescrita.

Previo a la discusión de este error, es meritorio mencionar que, como correctamente traen a colación ambas partes, el foro sentenciador resolvió en la referida *Resolución* que la acción contra tercero interpuesta por el Municipio y QBE Insurance no estaba prescrita. Es decir, la controversia sobre prescripción fue previamente adjudicada por el tribunal de instancia. Allí, el foro de origen determinó que la acción contra Triple S era de índole contractual, cuyo término prescriptivo de quince (15) años aún no había transcurrido. Por lo tanto, el fundamento esgrimido por el foro primario en la *Sentencia* que nos ocupa para desestimar la demanda contra tercero por prescripción no era el que estaba pendiente a ser resuelto a la fecha en que se celebró el juicio. En el juicio correspondía determinar el alcance de la póliza emitida por Triple S a favor de Roalca.

Sobre este particular, Triple S proveyó copia del contrato en la que evidenció que la obligación contraída por este de brindar defensa y cubierta al Municipio estaba limitada a aquellas reclamaciones relacionadas con la ejecución del contrato, y excluían las que fuesen resultado de la negligencia del asegurado adicional, en este caso, el Municipio. Por consiguiente, la obligación de Triple S de mantener indemne al Municipio cubría solamente aquellas reclamaciones resultantes de la ejecución del contrato de la rehabilitación de la Casa Bernier y no las ocasionadas por la negligencia del Municipio.

Finalmente, en el cuarto y último señalamiento de error, el Colegio arguye que el foro primario incidió en la concesión de costas otorgadas, particularmente la partida concedida para recobrar los gastos del perito. No le asiste la razón en este planteamiento.

Como establecimos previamente, al abordar el asunto de recobro de los gastos de un perito, nuestra jurisprudencia ha establecido que, en el caso particular de los expertos contratados por las partes, el reembolso procede de forma excepcional y cuando esté debidamente justificado. El

asunto queda a discreción del tribunal y se deberá tomar en consideración la utilidad del perito a la luz de los hechos particulares del caso. El perito utilizado debe tener una debida preparación y su testimonio debe ser de utilidad para que el tribunal resuelva la controversia presentada.

La intervención de este Foro revisor sobre las concesiones de costas estará sujeta a un abuso de discreción por parte del foro primario o en casos donde medie prejuicio, pasión, parcialidad o error manifiesto. En ausencia de alguno de estos elementos, este Tribunal de Apelaciones no intervendrá con la determinación hecha por el foro juzgador que otorgue las costas por uso de un perito. En el caso de autos, el testimonio pericial del Dr. Grovas Badrena fue fundamental en la imposición de daños. El tribunal primario reconoció que le otorgó un alto grado de credibilidad al mismo y, luego de estudiar el expediente, no apreciamos abuso de discreción por parte de este que amerite variar su dictamen. Por lo tanto, concluimos que no se cometió el señalamiento de error propuesto por el Colegio relacionado a la concesión de costas.

En virtud de lo anterior, colegimos que el Tribunal de Primera Instancia no erró al emitir la *Sentencia* determinando que el Municipio y el Colegio fueron responsables de los daños sufridos por Ilsa Centeno Añeses y sus hijos, Raúl e Ilsa M. Di Cristina Centeno. En fin, al evaluar concienzuda y ponderadamente los eventos procesales y la transcripción de la prueba oral al palio de la norma jurídica antes esbozada, coincidimos con la determinación del foro apelado. Por tanto, procede confirmar la *Sentencia* apelada.

**IV**

Por los fundamentos antes expuestos, confirmamos el dictamen apelado en ambos recursos.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones